FILED
2021 Mar-23 PM 03:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| EDWIN ABERNATHY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:19-cv-01969-LSC |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

## I.   Introduction

The plaintiff, Edwin Abernathy ("Abernathy"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). Abernathy timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Abernathy was 62 years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has completed four or more years of college. (Tr. at 12, 48.) His past work experience includes employment as an art teacher. (Tr. at 145.) Abernathy claims that he became disabled on November 13, 2015, due to Human

Immunodeficiency Virus ("HIV"), depression, post-traumatic stress disorder ("PTSD"), memory loss, headaches, and high blood pressure (Tr. at 124.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's physical and mental medically determinable impairments ("MDI"). *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that

"substantial medical evidence in the record" adequately supported the finding that the plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e).

The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can

make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g).  If the plaintiff cannot perform other work, the evaluator will find him disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Abernathy has not engaged in SGA since March 24, 2017—the alleged onset date of his disability. (Tr. at 17.) Next, the ALJ found that Abernathy has the following medically determinable impairments ("MDI"): HIV, condyloma, erectile dysfunction, and hypertension. (Tr. at 17.) However, the ALJ found that these impairments have not significantly limited (nor are expected to significantly limit) Abernathy's ability to perform basic work-related activities for 12 consecutive months. (Tr. at 18.) Therefore, the ALJ determined that Abernathy does not have a severe impairment or combination of impairments as defined by the regulations. (Tr. at 18-21.) The ALJ concluded his findings by stating that Abernathy "has not been under a disability, as defined in the Social Security Act, from March 24, 2017, through the date of this decision." (Tr. at 21.)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates

against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III.  Discussion

Abernathy alleges that the ALJ erred by (1) improperly finding his impairments non-severe at step two; and (2) improperly evaluating the statements of two certified registered nurse practitioners ("CRNPs"). (Doc. 13 at 1.)

#### A. Substantial evidence supports the ALJ's evaluation of Plaintiff's impairments at step two.

A severe impairment is an impairment that significantly limits a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 416.920–416.922. As the ALJ noted, basic work activities are the abilities and aptitudes necessary to do most jobs and include physical functions; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple

6

instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. *See* Tr. at 18; 20 CFR § 416.922(b). To satisfy step two, the severe impairment or combination of impairments must also meet a twelve-month durational requirement. *See* 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii); *Davis v. Barnhart*, 186 F. App'x 965, 967 (11th Cir. 2006).

An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.5121, 416.921; Social Security Ruling(s) ("SSR"s) 88-28, 96-3p, and 96-4p. The burden of showing that an impairment or combination of impairments is "severe" rests at all times with the claimant. *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 948 (11th Cir. 2006) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

Plaintiff alleged two types of impairments—physical impairments and mental impairments. However, the ALJ concluded that Abernathy did not have a severe MDI during the relevant period that could be expected to last for a continuous period of at least twelve months or result in death. (Tr. at 18-21.) For the reasons that follow, substantial evidence supports this decision by the ALJ.

1. Physical Impairments

The ALJ found Plaintiff had the physical MDIs of HIV infection, condyloma, erectile dysfunction, and hypertension. (Tr. at 17.) *See* 20 C.F.R. § 416.921. However, the ALJ found that these physical impairments were not severe. *Id.* Substantial evidence supports this decision.

First, the ALJ found that evidence from the record did not support Plaintiff's allegations of extreme physical symptoms to the degree alleged. (Tr. at 19.) Treatment notes from UAB indicated his HIV was regularly treated. (Tr. at 19, 437–38.) Indeed, Mr. James Raper, CRNP, and Dr. Michael Saag, M.D., noted in October 2016 that Plaintiff's HIV was well-controlled on medications, his condyloma was treated with medication, and his hypertension was stable. (*Id.*) A PAP to test for condyloma was negative. (*Id.*) Evidence that Plaintiff's physical conditions could be managed with treatment supports the ALJ's finding that these conditions were not "severe." *See* 20 C.F.R. § 416.929(c)(3)(iv)–(v) (treatment relevant in evaluating symptoms); *see also Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."). Furthermore, as noted by the ALJ, the physical examination in October 2016 was normal aside from some forehead lesions. (Tr. at 19, 435).

The ALJ also noted that, in April 2017, Plaintiff asserted medication compliance, but pharmacy records did not support this claim. (Tr. at 19, 425.) In July 2017, Plaintiff's condyloma was resolved, as evidenced by a September 2017 negative anal PAP. (Tr. at 19, 489.) In December 2017, Dr. Saag noted that he was doing well overall, tolerating his medications and controlling his HIV well. (Tr. at 19, 494–95, 498.) By May 2018, Plaintiff's condyloma had resolved. (Tr. at 19, 513.) Moreover, his hypertension was controlled with medication. (Tr. at 19, 426, 437, 497, 513.) Although symptomatic during the relevant period, the ALJ correctly concluded that there was no evidence of medical functional restrictions. (Tr. at 20.)

The ALJ relied on Plaintiff's own reported activities as well. Although not dispositive, a claimant's activities may show that his symptoms are not as limiting as alleged. *See* 20 C.F.R. § 416.929(c)(3)(i); SSR 16-3p; *Dyer*, 395 F.3d at 1210; *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987). The ALJ stated:

> Plaintiff walks [his pets] 4 or 5 times on some days . . . . He reported that he sometimes postpones bathing, getting a haircut, and shaving, and that sometimes he has problem with toileting due to irritable bowel syndrome, but otherwise is able to attend to his personal care. [Plaintiff] stated that he sometimes forgets to take his medication and forgets items to purchase at the grocery store, but that he is able to handle personal finances independently. . . . He prepares simple meals, does chores in the house and yard, shops for food and necessities in the store and on-line once or twice a week, drives, and is able to go out alone.

(Tr. at 19, 160–66.)

9

Because there is no indication that Plaintiff's physical impairments caused more than a slight abnormality or had more than a minimal effect on his ability to do basic work activities, substantial evidence supports the ALJ's determination that Plaintiff's physical impairments were not severe. (Tr. at 20.)

    2. <u>Mental Impairments</u>

In October 2016, about five months before his SSI application date, Plaintiff saw CRNP Raper and reported that "his disability was denied[1] and wants to file an appeal, but 'needs documentation of mental health troubles.'" (Tr. at 432.) At that meeting, Plaintiff reported financial concerns, being consumed with worries, grudges toward people, a belief that he had PTSD, and wanting probiotics for weight loss. (Tr. at 431–32.) He had recently seen a psychiatrist but was disappointed because he thought that the appointment was going to consist of talk therapy, but he was instead just prescribed medication. (Tr. at 431.) However, his psychiatric examination findings were normal. (*Id.*) He was "[a]lert and oriented" with "[n]o acute distress;" and he was described as "cooperative," with an "appropriate mood & affect." (*Id.*) At the October 2016 appointment, Dr. Saag agreed, saying that Plaintiff was doing okay, although "struggling with some psych issues/obsessing over folks who had wronged him." (Tr. at 438.) Plaintiff had previously been referred

---

[1] Plaintiff has previously applied for SSI and was denied at the initial level in 2015. (Tr. 152.)

to a psychologist, a psychiatrist, a mental health nurse practitioner, and a licensed professional counselor, but Plaintiff was clear that he did not want medication for mental health. (Tr. at 437.)

In September 2017, Dr. Sonya Heath, M.D., noted that although she was considering diagnosing Plaintiff with HIV-associated cognitive disorder for his reported memory difficulty, Plaintiff had not followed through with a referral for a neurocognitive evaluation. (Tr. 490.) The ALJ noted that the record shows "evidence of non-compliance with recommended treatment and with attending scheduled appointments." (Tr. at 20.)

Two months later, Plaintiff saw CRNP Raper again. (Tr. at 492–93.) He encouraged Plaintiff to keep his scheduled appointments with certified registered CRNP Susanne Fogger and neuropsychiatrist Dr. Powers in December. (Tr. at 496.) In an addendum, Dr. Saag noted that Plaintiff was "consumed with anxiety" but "doing well overall" with "HIV well controlled." (Tr. at 498.)

Plaintiff did not show up for his appointment with neuropsychiatrist Dr. Powers in December 2017. (Tr. at 513.) However, in February 2018, Plaintiff had an initial visit with CRNP Fogger and requested an antidepressant. (Tr. at 499.) He admitted he was not depressed but was worried about his depression returning. (*Id.*) He was not suicidal or psychotic, and he was overall pleasant and cheerful. (Tr. at

11

499.) Plaintiff was independent in his daily activities and was able to drive. (Tr. at 501.) He was cooperative, with a level mood, an anxious and talkative affect, and normal speech. (Tr. at 502.) He was also alert, oriented, and in no acute distress. (Tr. at 501.) CRNP Fogger concluded that Plaintiff did not currently meet the criteria for major depressive disorder but clearly had depression earlier that year. (Tr. at 503.) She prescribed Lexapro. (*Id.*)

Plaintiff returned in April 2018 to CRNP Fogger and said he felt like his appointments and Lexapro were helping. (Tr. at 504.) He said he was seeing his disability lawyer Monday and would like a higher dose of antidepressant. (*Id.*) He was looking forward to his book club, had read a book from cover to cover for the first time in a long time, and was walking more miles on the treadmill. (*Id.*) A mental status examination showed results within normal bounds, and his PHQ-9 depression score was 9—showing only mild depression. (Tr. at 506.) CRNP Fogger assessed recurrent major depression in partial remission and increased his dose of Lexparo. (Tr. at 507.)

In June 2018, Plaintiff saw CRNP Fogger again. Plaintiff complained that he may never get back the drive that he had when he was 30 to 50 years old. (Tr. at 516.) However, he had written a children's book and wanted to start a new novel. (*Id.*) He was reading more books but was easily distracted by interesting articles on the

internet. (*Id.*) He was having issues with property taxes and a lawsuit. (*Id.*) A mental examination was again within normal bounds, and his PHQ-9 depression score was 8.5. (Tr. at 517.) CRNP Fogger's assessment was major depressive disorder with anxiety, doing better with Lexapro, and she noted that Plaintiff did not want to make any changes. (Tr. at 518.)

In August 2018, Plaintiff saw CRNP Fogger and was reportedly struggling with economic issues. (Tr. at 519.) A mental status examination showed some deficits, including feeling "overwhelmed by the 'stuff' in his home, [feeling] helpless and hopeless" but with "no plan" to commit suicide. (Tr. at 520.) The assessment also found he was pleasant, with a logical, goal-directed, and coherent thought process and good cognition. (*Id.*) CRNP Fogger started him on Wellbutrin. (Tr. at 521.)

In October 2018, Plaintiff saw CRNP Fogger and had discontinued Wellbutrin. (Tr. at 522.) He had some deficits on the mental status examination but was also logical, pleasant, and spoke normally. (Tr. at 523.)

Nothing in this record describes an impairment that would seriously limit Plaintiff's ability to work for a period of twelve months. Plaintiff repeatedly mentioned his economic issues and his pending social security disability claim. (Tr. at 432, 504.) He refused medications to treat depression, but he felt better when he

13

took them. (Tr. at 504.) The ALJ noted that Plaintiff did not cooperate with neuropsychological testing, and Plaintiff's completed exams did not demonstrate severe work-related impairments. (Tr. at 20, 484, 487.)

These facts, along with the Plaintiff's own description of his daily activities, provides substantial evidence in support of the ALJ's determination that Plaintiff had no severe impairments at step two.

### B. The ALJ properly applied the "acceptable medical source" standard.

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

However, only "acceptable medical sources" can provide medical opinions. 20 C.F.R. § 404.1527. Current regulations provide that an acceptable medical source includes a "Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed

14

scope of practice." 20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7). But this regulation only applies to claims filed "on or after March 27, 2017." *Id*. For claims filed prior to March 27, 2017, nurse practitioners "are not acceptable medical sources, so their opinions are not 'medical opinions' and 'cannot establish the existence of an impairment.'" *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (quoting *Crawford*, 363 F.3d at 1160). Therefore, the opinions of nurse practitioners are not entitled to substantial weight in cases filed before March 27, 2017. *Id*.

Plaintiff filed his SSI claim before March 27, 2017.[2] Accordingly, CRNP Raper and CRNP Fogger are not acceptable medical sources under the regulations. The ALJ fully considered these nurse practitioners' opinions but properly discounted them because the nurses were not acceptable medical sources within the meaning of the Social Security Act. (Tr. at 19–20.) As such, they are not entitled to substantial weight.

Plaintiff also argues that CRNP Raper and CRNP Fogger constitute acceptable medical sources because doctors co-signed some of their opinions. However, the Eleventh Circuit has never found that a doctor's signature transforms the opinion of an unacceptable medical source into the opinion of an acceptable

---

[2] On March 24, 2017, an SSA field office stamped Abernathy's appointment of representative form for his claims. (Tr. at 151.) Abernathy's SSI Application Date was documented as March 24, 2017. (Tr. at 151.)

15

medical source. Moreover, the ALJ considered Dr. Saag and Dr. Heath's signed addenda and determined that the doctors' opinions were evidence supporting his finding that Plaintiff had no severe impairments. (Tr. at 19–20.) Dr. Saag regularly commented that Plaintiff was "doing well." (*See*, *e.g.*, Tr. at 498.) Dr. Heath commented that she would like to run cognitive tests, but she never diagnosed Plaintiff with any mental impairment because Plaintiff failed to attend his neuropsychiatric appointment in December 2017. (Tr. at 490, 513.)

Moreover, mere diagnoses or abnormalities do not establish limitations. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of . . . impairments does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard."). Any mere documentation of Plaintiff's reports of mental symptoms would not be an acceptable basis for a medical opinion. *See* 20 C.F.R. § 416.927(c); *Crawford*, 363 F.3d at 1159–60; *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 528 (11th Cir. 2015). The ALJ extensively considered the medical records, by whichever author, and nothing in their records clearly undermines the substantial evidence supporting the ALJ's finding that Plaintiff's impairments were not "severe" during the relevant period.

Further undermining Plaintiff's claim of error, a vocational expert testified at the hearing that a hypothetical individual with his vocational factors and a limitation

to light work, with postural, environmental, and mental limitations and a need for an absence each month could nonetheless perform a significant number of jobs existing in the national economy (Tr. 49-50). Plaintiff does not allege—not to mention show—that he was more limited than that hypothetical.

The record demonstrates that the ALJ applied the proper legal standard to determine that Mr. Raper and CRNP Fogger are not acceptable medical sources. Moreover, the ALJ properly considered the addenda written by Dr. Saag and Dr. Heath, and substantial evidence supports his determination that Plaintiff's impairments were not severe.

## IV. Conclusion

Upon review of the administrative record, and considering all of Abernathy's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. The motion to remand is due to be denied. A separate order will be entered.

**DONE** and **ORDERED** on March 23, 2021.

L. Scott Coogler<br>
United States District Judge

203171